UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MICHAEL GIORDANO,

                Plaintiff,                  **MEMORANDUM AND ORDER**
                                                                                   CV 08-0391 (WDW)

       -against-

COCA-COLA ENTERPRISES INC. and COCA-COLA
ENTERPRISES EMPLOYEE' PENSION PLAN,
                            Defendants.
----------------------------------------------------------------------X

**APPEARANCES:**

**CIARELLI & DEMPSEY**
Attorneys for Plaintiff
737 Roanoke Avenue
Riverhead, New York 11901

**MILLER & MARTIN PLLC**
Attorneys for Defendants
1170 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309

**LAZER, APTHEKER, ROSELLA & YEDID, P.C.**
Attorneys for Defendants
225 Old Country Road
Melville, New York 11747

**WALL, Magistrate Judge:**

      Before the court is a motion for summary judgment by the Defendants, Coca-Cola Enterprises Inc. ("CCE") and Coca-Cola Enterprises Employees' Pension Plan ("CCE Plan"). Docket Entry [20 & 25]. The motion is opposed by the plaintiff, Michael Giordano. For the reasons set forth herein, the Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. The claims pursuant to 29 U.S.C.§ 1132(a)(1)(B) will go to trial and the claims for breach of fiduciary duty and breach of contract are dismissed.

A conference will be held on **April 1, 2011 at noon**, to discuss trial dates or settlement, if **both** parties wish to pursue settlement discussions. If so, they should so advise the court and should fax settlement statements not to exceed 3 pages to 631-712-5725 no later than March 31, 2011.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted.

This case involves the calculation of pension benefits owed to Plaintiff. Plaintiff, who accrued pension benefits as both a union and nonunion employee, claims that he struck an oral agreement (the "Oral Agreement") with his supervisor during his transition from a union to management position that contradicts the terms of the written pension plan applicable at the time he filed for benefits. Plaintiff claims that his pension benefits should be calculated based on the Oral Agreement, while the Defendants argue that oral modification of a pension plan is not allowed and plaintiff's benefits must therefore be calculated under the applicable written plan only. The defendants, for the purposes of this motion only, do not dispute that an oral promise as described by Giordano was made, but argue that, as a matter of ERISA law, such a promise cannot be enforced. The dispute, as explained below, boils down to a question of whether Giordano's non-union pension benefits should be subject to a set off of the pension benefits earned by Giordano in his 25 years as a union employee.

Plaintiff was hired by the Coca-Cola Bottling Company of New York ("CCBCNY") on November 15, 1971. Defendant's Rule 56.1 Statement ("Def's Stmt"), DE[21-4] at ¶1. At the time he was hired, Plaintiff became a member of the Soft Drink and Brewery Union Local 812

(the "Union"), and accrued pension benefits under the Soft Drink and Brewery Workers Union Local 812 Retirement Plan (the "Union Plan"). *Id*. ¶¶ 1&2. On March 23, 1997, Plaintiff was promoted to the non-union position of Fleet Supervisor, at which time he ceased to accrue pension benefits under the Union Plan, instead becoming a participant in the Retirement Plan for Non-Union Employees of the CCBCNY (the "CCBCNY Plan"). *Id*. ¶ 3, 4.

Section 11.2 of the CCBCNY Plan states in pertinent part that "[t]he benefits calculated hereunder shall be subject to a reduction for any benefit the Employee is eligible to receive on account of participation in a union retirement agreement to which the Company contributed." Forlidas Aff., DE[22], Ex. 6. Although Plaintiff had previously accrued benefits under the Union Plan, he argues that this provision does not apply to him based on the Oral Agreement. He claims that before he accepted the nonunion position as Fleet Supervisor, he negotiated the calculation of his pension benefits with his supervisors, Kevin Zoeller and Joe Chernek. Giordano Aff., DE[23-2], ¶3. Plaintiff claims that, contrary to Section 11.2 of the CCBCNY Plan, CCBCNY "agreed to pay the Plaintiff pension benefits under its employee pension benefit plan based on his hiring date of November 15, 1971, with no offset or deduction of any union pension benefits due and earned by him for the period of his union membership." Giordano Aff. ¶3; Compl.¶ 10. In other words, the gravamen of the alleged Oral Agreement was that, when he retired, Giordano would collect his union pension for his 26 years of union service, plus a nonunion pension based on his 26 years of union service and however many years he worked as a nonunion employee, without any setoff of his union pension. Giordano explains that this was a fair agreement, because the change from a union to a nonunion job meant he could no longer earn overtime and that non-union pension benefits were less generous than union pension benefits.

3

Giordano states that the promise that his non-union pension would be calculated without reference to his union pension made up for the difference and that he would not have taken the non-union job but for the promise. He further states that without the Oral Agreement regarding his pension benefits, "it would have meant that based on the numbers, for the ten years I had anticipated working, I would be accumulating no additional union benefits, while at the same time earning no additional or future management pension benefits." Giordano Aff., DE[23-2], ¶3.

Soon after Plaintiff's promotion, the stock of CCBCNY was acquired by CCE, and on December 31, 1998, the CCBCNY Plan was merged into the CCE Plan. *Id*. ¶¶ 5&6. With the merger of the two plans, Plaintiff became a participant in the CCE Plan and he remained a participant in the CCE Plan until he filed his initial claim for benefits on March 22, 2007. Def's Stmt. at ¶¶7, 14,&15. The terms of the CCE Plan were used to calculate Plaintiff's benefit determination issued by the CCE Plan on June 1, 2007. Def's Stmt. at ¶16. The parties dispute the accuracy of the determination issued on that day. Plaintiff's Local 56.1 Statement ¶16.

Plaintiff reports that, starting in 1998, he received an annual Total Rewards Statement regarding his pension benefits that did not mention any set off for the union pension. Giordano Aff., ¶4. The 2008 Total Rewards Statement reported that Giordano's accrued monthly non-union benefit, if he retired at age 66, would be $2,179.00. *Id*., Ex. C. The defendants point out that the Total Rewards Statement also included a disclaimer that stated " "Every effort has been made to ensure the accuracy of the information provided. However, errors can occur; this statement contains only brief summaries of the various benefits. In all cases, actual benefits will be paid in accordance with the applicable plan documents, insurance contracts, and Federal

regulations." DE [22], Forlidas Aff., Ex. 6, next to last unnumbered page.

In January 2006, Giordano reports, he received a Pension Benefit Estimate Statement issued by One Source, the pension administrator, not by CCE. That Statement reported his hire date as 11/15/71 and stated his accrued monthly pension benefit as $1,782.04 if he retired at age 63. *Id.*, Ex. D. The defendants point out that the 2006 statement also contained a disclaimer, which stated that "These pension benefit amounts assume you have never had service under a collective bargaining agreement," and that "This estimate is based on the data and assumptions shown above. . . . *Any estimate is designed to show you what your future pension benefits may be, based on certain assumptions. Remember, this is only an estimate and your actual pension benefit will be based on actual personal information when you retire or leave the company.*" *Id.*, Ex. 4 (italics in original).

In 2006, Giordano decided to retire and gave notice to the company. He received a notice advising him that his non-union pension benefits would be $444.89. Giordano Aff., Ex. E. He wrote a letter to the company, reporting that the notice of benefits was wrong because when he was hired into management, it was agreed that he "would be covered by the New York Coca-Cola Pension Plan from the date starting 11/15/1971 and not have [his] Union time deducted." *Id.*, Ex. F. The defendants say that the reason for the difference was a data entry error. Suzanne Forlidas states that "[i]t appears that employment records provided to CCE by the CCBCNY Plan at the time of the CCBCNY acquisition did not indicate Plaintiff's prior status as a union employee. As a result, Mr. Giordano's employment record was entered into the Pension System as if he had been a non-union employee since his original date of hire. The Pension System then generated pension estimates for Mr. Giordano based on this inaccurate information." Forlidas

Aff., DE[22], ¶12.

Ms. Forlidas also explains the way that the pension benefits amounts were arrived at taking into consideration Giordano's union pension, a rather complicated process. Article I.A. of the CCE Plan, in which Giordano was a participant at the time of his retirement, sets forth the formula for calculating accrued benefits. Forlidas Aff., Ex. 1 *and see* Brainerd Letter, Ex. 11. Because Plaintiff had been a participant in the CCBCNY Plan before its merger with the CCE Plan, his accrued benefits under the CCE Plan would be the greater of two potential calculations, either A+B, or C, where "A" is the participant's benefit under the merged plan, in this case the CCBCNY Plan, "B" is an amount determined by multiplying 1.15% of the participant's "final average earnings" by his number of years of "benefit service" credited under the CCE Plan after the Merger Date, and "C" is an amount determined by multiplying 1.15% of the participant's final average earnings by all of the participant's years of "benefit service." Brainerd Letter, Forlidas Ex. Aff. 11, at 2. Because the "A" component under the CCE Plan is defined as "Participant's Predecessor Plan Benefit," in this case the terms of the CCBCNY Plan are implicated for calculating Plaintiff's benefit under the CCE Plan.

The defendants set forth a rather complicated explanation of how the A+B and the C calculations worked out for Giordano. I set forth here a somewhat abbreviated version of their explanation. The bottom line of their explanation is that the most advantageous result for Giordano came from using the C calculation, predicated on the CCE Plan. A strict application of the plan requirements under the A+B calculation resulted in a benefit of zero, while the C calculation resulted in a benefit of $687.56 per month if Giordano retired at age 66. Forlidas Aff., ¶16, 29-32. Defendants explain that the "C" component was greater than the "A+ B"

component, which is based upon the benefit under the CCBCNY Plan, because the A+B calculation required an offset of the pension benefits Plaintiff accrued under the Union Plan, a significant amount of money.[1] Forlidas Aff. ¶ 48. Defendants explain that the "A+ B" calculation included all of Giordano's years of service, going back to 1971, and also included an offset of Plaintiff's Union Plan benefits pursuant to Section 11.2 of the CCBCNY Plan. Forlidas Aff. ¶31. To avoid the harsh result of the A+B calculation, Forlidas explains that the CCE Global Retirement Plans Committee ("the GRPC") interpreted the relevant portions of the plan "to mean that a participant's CCBCNY Plan benefit is the *greater of* (1) the benefit obtained by taking all CCBCNY service (union and non-union) into account and reducing such benefit by the amount of any benefits accrued under union-sponsored plans with respect to such period of service, or (ii) the benefit obtained by taking into account CCBCNY service only for those periods an employee was not a participant in the union-sponsored plan." Forlidas Aff., ¶33. This interpretation led, ultimately, to a determination that Giordano's benefit under A+B would be $657.02 a month at age 66. Forlidas Aff., ¶¶34-41. Calculation of the C component, which did not include credit for union years of service nor an offset for his union pension benefit, resulted in a benefit of $687.56, the greater of the two calculations. *Id.* at ¶¶42-48. The defendants maintain that if they count the union years of service in either calculation, they must also offset the union pension.

Plaintiff contends that under the Oral Agreement, this benefit calculation is erroneous. Under the Plaintiff's argument, the Oral Agreement demands that his benefit be calculated without any offset for his Union Plan benefit as though he had been a participant in the

---

[1] For the purposes of calculating Plaintiff's benefit under the CCBCNY Plan, his Union Plan benefit was equal to $2,575.98 if he retired at 66.

CCBCNY Plan since he was hired in 1971. Plaintiff appealed defendants' determination on June 30, 2007, but the CCE Global Retirement Programs Committee affirmed it on November 29, 2007. Def's Stmt. ¶¶17&18. Plaintiff filed this action on January 30, 2008, alleging that CCE improperly calculated his pension benefits inasmuch as the Oral Agreement precluded any offset of his Union Plan benefit in the determination of his CCE Plan benefit. The claims set out in the Complaint are for several violations of ERISA, including the inaccurate calculation claim, a claim for failure to contribute, and a breach of fiduciary duty claim. He also claims breach of contract.

The plaintiff has provided several documents that he claims support his allegations and require denial of the motion. First, he has provided a letter from Kevin Zoeller, his supervisor at the time of his promotion, which arguably supports the contention that plaintiff and CCBCNY engaged in negotiations at the time of his promotion. Giordano Aff., Ex. H. Next, Plaintiff points to a Total Rewards Statement which he claims he received annually, although he has provided a copy of only the 2006 Statement. Giordano Aff. ¶ 4; Girodano Aff. Ex. C. The 2006 Total Rewards Estimate projected a monthly retirement plan benefit of $2,537 subject to some qualifying assumptions, including retirement at age 66.[2] Giordano Aff., Ex. C. Lastly, Plaintiff points to a Pension Benefit Estimate Summary generated by the CCE Plan and printed by the Plaintiff on January 10, 2006. Giordano Aff., Ex. D. Plaintiff argues that, in accordance with the agreement, this document reflects a hire date of November 15, 1971 and an estimated

---

[2] It reads: "**Your Projected Monthly Retirement Income.** The Following information includes projections of the estimated monthly retirement benefits payable to you. These estimates are as of December 31, 2005, and assume that you continue working with CCE until the retirement age shown in the chart, start receiving your pension benefit immediately upon retirement, and that your 2005 annual base earnings and the current Social Security law remain unchanged until retirement." Giordano Aff. Ex. C at 5.

monthly pension benefit of $1,782.04. Def's Stmt. ¶¶ 11&12; Giordano Aff., Ex. D. Plaintiff argues the amounts reflected in these documents are consistent with the Oral Agreement in that they do not offset any union benefits. Giordano Aff. ¶¶ 4&5.

Defendants challenge the assertion that these documents confirm the effect and existence of the Oral Agreement. According Defendants, the amounts reflected in the 2006 Total Rewards Statement and the Pension Benefits Estimate were the result of a data entry error committed when the CCBCNY Plan was merged with the CCE Plan. Forlidas Aff. ¶12. They claim that the Employment records for the CCBCNY Plan failed to indicate Plaintiff's prior status as a union employee. *Id*. Thus, they argue, rather than confirm the Oral Agreement, the amounts in the Total Rewards Statements and Pension Benefit Estimate Summary reflect a mistake in the data used to calculate these estimates. Defendants further point out that the Total Rewards Statements and the Pension Benefits estimate included disclaimers. The Pension Benefit Estimate Summary included the following language: "These pension benefit amounts assume you have never had service under a collective bargaining agreement." *Id*. at ¶13. The plaintiff argues that, rather than giving him reason to think that his benefits might be reduced, that language precisely reflects his understanding of how his benefits were to be calculated - without reference to his union pension. The copy of the Total Rewards Statement provided by the Defendants includes pages not included by the Plaintiff, which state: "Every effort has been made to ensure the accuracy of the information provided. However, errors can occur. This statement contains only brief summaries of the various benefits. In all cases, actual benefits will be paid in accordance with the applicable plan documents, insurance contracts, and Federal regulations." Forlidas Aff. Ex. 5.

9

## DISCUSSION

**Summary Judgment Standards**

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In re Blackwood Assocs., L.P.* 153 F.3d 61, 67 (2d Cir. 1998) and citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 128 (2d Cir. 1996). The applicable substantive law determines which facts are critical and which are irrelevant. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir. 1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash &*

*Rubbish,* 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322).

**Plaintiff's ERISA Claims Pursuant to Section 1132(a)(1)(B) :**

Plaintiff claims that CCBCNY promised him that his pension benefits under the CCBCNY Plan would be calculated as though he had been a member of the CCBCNY Plan since the date of his original hire and that his CCBCNY Plan benefit would not be subject to an offset for his Union Plan benefit. The CCBCNY Plan, and the CCE Plan into which it merged, are employee pension benefit plans within the meaning of ERISA. Defendants argue that Plaintiff's claim is based on an oral promise that is unenforceable under ERISA. The Second Circuit has held that, as a general matter, "oral promises are unenforceable under ERISA and therefore cannot vary the terms of an ERISA plan." *Perreca v. Gluck,* 295 F.3d 215, 225 (2d Cir. 2002) (citing *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 10 (2d Cir. 1992) ("ERISA explicitly provides, in section 402(a), that all agreements relating to pension benefits must be in writing. ERISA § 402(a), 29 U.S.C. § 1102(a)(1)")). "As a matter of law, a benefit plan covered by ERISA cannot be amended orally. ERISA requires that all employee benefit plans be in writing, the amendment procedures must be explicitly set forth, and those whom must approve an amendment must be identified." *Ulrich v. Linotype-Hell Co.*, 187 F. Supp. 2d 68, 74-75 (E.D.N.Y 2002). The requirement that modifications be in writing "protects employees from having their benefits eroded by oral modifications to the plan. 'Furthermore, the writing requirement protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to such under the express terms of the plan. The statutory language of §1102(a)(1) is clear and concise and must be enforced as written. To hold otherwise would not only thwart congressional purpose and intent, but would afford less protection to employees and

their beneficiaries.'" *Dunham-Bush,* 959 F.2d at 10 (quoting *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1296 (5th Cir.1989)).

Exceptions to this rule are made, however, on the basis of promissory or equitable estoppel where "extraordinary circumstances" are shown. *See Devlin v. Empire Blue Cross and Blue Shield*, 173 F.3d 94, 101 (2d Cir. 1999); *Fershtadt v. Verizon Communications, Inc.,* 2010 WL 571818, *14 (S.D.N.Y. Feb. 9, 2010). To prevail on a promissory estoppel claim under ERISA, a plaintiff must prove "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced," and must "adduce not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to satisfy an extraordinary circumstances' requirement as well." *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 151 (2d Cir. 1999)(internal citations and punctuation marks omitted); *Fershtadt,* 2010 WL 571818 at *14. Equitable estoppel requires a showing of (1) material misrepresentation; (2) reliance; and (3) damage. *See Warren Pearl Construction Corp. v. Guardian Life Ins. Co. of America,* 2008 WL 5329962, *5 (S.D.N.Y. Dec. 9, 2008) (citing *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir. 1993)).

It has been noted that "Equitable estoppel is distinct from promissory estoppel. Promissory estoppel involves a clear and definite promise, while equitable estoppel involves only representations and inducements . . . . The major distinction between equitable estoppel and promissory estoppel is that the former is available only as a defense, while promissory estoppel can be used as the basis of a cause of action for damages." 28 Am. Jur. 2d Estoppel and Waiver §35. Although the facts herein, which involve an alleged promise, would suggest that the plaintiff would rely on a promissory estoppel argument, he does not. Instead, he says that

12

equitable estoppel applies, and that the offer made to him when he accepted the management job was a "deliberate misrepresentation, made to induce [him] to leave his union position . . . ." DE [23-1], Pls. Mem. in Opp., at 6. On the other hand, he also argues that "[a]ll evidence shows it was an offer made in good faith with the intention of complying with the offer, upon which the Plaintiff relied to his detriment," which the record shows to be a much more accurate assessment of the facts. *Id*. at 6. Further, for the purposes of this motion, the defendants accept the claim that a promise was made in good faith, and they mount an argument against promissory estoppel. DE[20], Defs. Mem in Supp., at 4; DE[24], Reply Mem., at 1-6.

Perhaps the plaintiff relies on equitable estoppel because, as noted *supra*, promissory estoppel has been described as a cause of action, while equitable estoppel is a defense, and there is no estoppel claim in the Complaint. It is settled that a claim not raised in a complaint may not be raised for the first time in opposition to a dispositive motion. *Arnold v. Storz,* 2005 WL 2436207, *5 (E.D.N.Y. Sept. 30, 2005)(citations omitted). However, a complaint need not expressly plead the legal theories or statutory basis supporting a claim, but only state "facts that can be construed as alleging the existence of such claims." *Id.* (citations omitted). I find that the facts alleged in the Complaint give rise to an inference of estoppel, at least for the purposes of this motion for summary judgment. And, whether the circumstances of this case are viewed from the promissory or equitable perspective, the issue boils down to whether there are extraordinary circumstances.

The Second Circuit has limited application of estoppel in ERISA cases to "circumstances where a defendant induced an irrevocable action on the part of a claimant." *Fershstadt,* 2010 WL 571818 at *14. In *Schonholz v. Long Island Jewish Med. Ctr.,* for example, the defendants

promised severance benefits to induce the plaintiff to retire, and then reneged once she had resigned, leading the court to a finding that defendants were estopped. 87 F.3d 72, 78 (2d Cir. 1996). In *Devlin,* the Second Circuit applied the principles set forth in *Schonholz,* and refused to expand its application, finding that the mere fact that some employees considered promised medical benefits in timing their retirements was, without more, insufficient to constitute extraordinary circumstances. 173 F.3d at 102.

Some courts have analyzed the application of estoppel in terms of intentional, as opposed to unintentional, inducement. In *Arnold*, the court noted that courts in this Circuit "have tended to find 'extraordinary circumstances' where an employer induced an employee to take some action that benefitted the employer by offering benefits to the employee which were later reneged." 2005 WL 2436207 at *6 (citing *Schonholz* and *Calogera Abruscato v. Empire Blue Cross & Blue Shield,* 274 F.3d 90, 101 (2d Cir. 2001)). But, the *Arnold* court observes, the Second Circuit has stated that a showing of intentional inducement is not necessarily the only way that extraordinary circumstances can be found. *Id.* at *7 (citing *Devlin v. Empire Blue Cross & Blue Shield ("Devlin II"),* 274 F.3d 76, 86 (2d Cir. 2001) as declining to decide whether extraordinary circumstances other than intentional inducement would suffice). Indeed, several courts in this Circuit have found extraordinary circumstances without intentional inducement "where an employer promised benefits to an employee in good faith in an intentional effort to induce the employee to take some action, and the employer later reneged on its promise." *Id.* (citing *Bouboulis v. Transportation Workers Union,* 2004 U.S. Dist. LEXIS 12906 (S.D.N.Y. July 7, 2004), *rev'd on other grounds*, 442 F.3d 55 (2d Cir. 2006); *Karl v. Asarco, Inc.,* U.S. Dist. LEXIS 25956 (S.D.N.Y. Dec. 22, 2004)("the list of extraordinary circumstances, however,

is not necessarily limited to those situations addressed in existing case law"); *Hart v. Equitable Life Assur. Soc.,* 2002 U.S. Dist. LEXIS 22928, *13 (S.D.N.Y. Nov. 26, 2002)("the Second Circuit in the most recent *Devlin* case made it clear that 'extraordinary circumstances' are not limited to circumstances of intentional inducement")).

The extension of extraordinary circumstances to cases of non-intentional inducement notwithstanding, however, the "facts demonstrating 'extraordinary circumstances' must go beyond a simple showing of reliance on a promise, harm and injustice, as would be required of any estoppel claim." *Arnold,* 2005 WL 2436207 at *7 (citing *Devlin II,* 274 F.3d at 85-87. Courts have looked, for example, for some "remarkable consideration" that the employer may have derived, such as resignation of employment or foregone salary, and have found no grounds for estoppel where the plaintiff failed to allege such circumstances. *See Straus v. Prudential Empl. Sav. Plan,* 253 F. Supp. 2d 438, 452 (S.D.N.Y. 2003). Here, the implied allegation is that the defendant induced Giordano to take the management job by promising him that when he retired, his non-union pension would be based on a period of service going back to his original hire date, with no set off for his union pension. An alternative estoppel theory is that the years of benefits statements were misrepresentations on which Giordano relied until it was too late for him to do anything about it - for example, return to union work or attempt to verify his oral agreement while it was still fresh in people's minds. While there is no basis for inferring that Coca Cola got any "remarkable consideration" from Giordano's accepting the non-management job, the alleged oral agreement and the ten years of statements that appeared to confirm the terms of that alleged agreement present issues of material fact and give rise to the inference that they may amount to an "extraordinary circumstance" if proved.

The plaintiff also argues that the ten years of benefits statements he received, statements that reported pension amounts completely in accord with his expectations, constitute written promises of the pension benefits he expected. The defendants disagree, arguing that the various disclaimers in the statements that Giordano was sent[3] lead to the conclusion that he could not rely on the amounts stated. *See* DE[24], Reply Mem. at 2-5. Defendants argue that caselaw supports a finding that, to the extent that plaintiff suggests that the statements of projected benefits alone constituted a promise supporting his claim of promissory estoppel, that claim must be rejected. *Id.* But I need not decide that issue now, because I find that issues of material fact exist that require denial of the motion as to the Section 1132(a)(1)(B) claims. Here, Giordano argues that the discrepancy between the estimates and the final benefit are just too great, and creates issues of fact about the reasons for the large difference. I agree and find that he is entitled to a trial. Although the defendants state that the estimates were the result of a data entry, they have presented insufficient proof of that claim, and it must be established at trial. I note further that although the defendants accepted the terms of the alleged Oral Agreement for purposes of this motion, that acceptance does not extend to the trial, and the plaintiff will have to prove the existence and terms of the agreement, as well as facts relating to the claim of extraordinary circumstances.

For these reasons, summary judgment on the ERISA claims pursuant to Section 1132(a)(1)(B) is denied. I turn now to the remaining claims.

---

[3]The defendants note that although Giordano relies on ten years of statements, he has not produced all of them. At trial, all of the statements should be introduced, and if the plaintiff is not himself in possession of them, the defendant should regenerate them if possible.

**Breach of Fiduciary Duty Claim under ERISA:**

Plaintiff asserts that Defendants breached a fiduciary duty by failing to notify him of their alleged violations of ERISA. Although the Complaint does not specify whether the breach of fiduciary duty claim is brought pursuant to state law or ERISA, this court will assume for the purposes of this motion that it is brought pursuant to ERISA, inasmuch as it would be preempted under state law.

"ERISA permits individual suits for equitable relief to remedy a breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3)."[4] *Moore v. Fox Chevrolet, Oldsmobile, Cadillac, Inc.*, 2007 WL 925721, *6 (N.D.N.Y Mar. 26, 2007) (citing *Pronti v. CNA Financial Corp.*, 353 F. Supp. 2d 320, 324 (N.D.N.Y. 2005). Equitable relief, however, is "appropriate" only where Congress has not provided adequate relief elsewhere. *Varity Corp. v. CNA Financial*, 516 U.S. 489, 515 (1996); *see also Pronti v. CNA Financial Corp.*, 353 F. Supp. 2d 320, 324 (N.D.N.Y. 2005). If, for example, a plaintiff can pursue a claim for benefits under Section 1132(a)(1)(B)[5], he cannot also seek equitable relief on a breach-of-fiduciary-duty claim under 1132(a)(3), even in the alternative. *Moore* 2007 WL 925721 at **6-7(citing *Pronti*, 353 F. Supp.2d at 324).

In this case, Plaintiff claims the Defendants violated ERISA by improperly calculating his

---

[4]Section 1132(a)(3) states in pertinent part: "A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. 1132(a)(3) (2010).

[5]Section 1132(a)(1)(B) states in pertinent part: "A civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. 1132(a)(1)(B) (2010).

pension benefits and by failing to make contributions to the pension fund as required by the alleged Oral Agreement. In addition, Plaintiff claims that Defendants breached a fiduciary duty to notify him of these violations. He further asserts that "as a result of [the] breach, the Plaintiff will not receive the pension benefit to which he is entitled under the Plan and in accordance with the Agreement." Compl. at ¶30.

Defendants argue they are entitled to summary judgment on the breach of fiduciary duty claim because his claim for benefits affords him adequate relief. In his prayer for relief, Plaintiff seeks payment of his accrued pension benefits as well as declaratory judgement and an order permanently enjoining and restraining Defendants "from engaging in such illegal and wrongful practices, customs and policies." The Court agrees with Defendants that the equitable relief sought by plaintiff is duplicative of his claim for benefits. Ultimately, Plaintiff seeks to recover the pension benefits he believes are due unto him under the alleged Oral Agreement. This relief can be adequately achieved through his Section 1132(a)(1)(B) claim for benefits and is thus not also entitled to seek the identical relief, even in the alternative, under Section 1132(a)(3). The claim for breach of fiduciary duty is thus dismissed.

**Breach of Contract Claim:**

Plaintiff raises a breach of contract claim alleging that he and CCBCNY entered into an agreement in which he would accrue pension benefits under the CCBCNY Plan without an offset for benefits accrued under the Union Plan. He claims that Defendants breached this agreement when they calculated his benefits as subject to an offset for Union Plan benefits. Defendants argue they are entitled to summary judgement on this claim because ERISA preempts any state law claims that relate to an employees benefit plan. I agree.

ERISA's preemption of state law is expansive, and is not limited to "state laws specifically designed to affect employee benefit plans." *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987). Section 1144(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. 1144(a) (2010). The Second Circuit has applied a two part inquiry to determine whether a state law claim is preempted by ERISA. "The queries are (a) whether the contract claim asserted is related to an employee benefit plan, and if so, (b) whether there is an exception under ERISA that precludes pre-emption of the state law." *Devlin*, 173 F.3d at 101(citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (2d Cir. 1983)). A state law "relates to" an employee benefit plan if it "has a connection with or reference to such plan." *Dunham-Bush, Inc.*, 959 F.2d at 8.

The breach of contract claim in this case is based on an alleged agreement going to the calculation of Plaintiff's accrued benefits under the CCBCNY Plan as part of the calculation of benefits under the CCE Plan. To resolve the claim that Defendants breached this alleged agreement would necessarily involve an analysis of both the CCBCNY Plan and the CCE Plan as well as ERISA. Furthermore, none of the ERISA exceptions found in Section 1144(b) and (d), apply in this case. Therefore, Plaintiff's breach of contract claim is preempted by ERISA and is dismissed.

Dated: Central Islip, New York  **SO ORDERED:**
       March 7, 2011

                                              /s/ William D. Wall
                                              WILLIAM D. WALL
                                              United States Magistrate Judge